# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ZUCKERMAN HONICKMAN, LLC**<br>191 South Gulph Rd.<br>King of Prussia, PA 19406<br><br>*Plaintiff,*<br>v.<br><br>**LORD HOBO BREWING COMPANY, LLC**<br>5 Draper St.<br>Woburn, MA 01801<br>*Defendant.* | Civil Action No.: 1:25-cv-12535<br><br>**COMPLAINT** |

## COMPLAINT

Zuckerman Honickman, LLC ("ZH"), by and through its counsel, Cozen O'Connor, hereby complains against Defendant, Lord Hobo Brewing Company, LLC ("Lord Hobo"), and avers as follows:

### PRELIMINARY STATEMENT

1. This is an action for $1,248,631.33 in money damages arising out of Defendant Lord Hobo's failure to honor its obligations under the parties' written Take or Pay Supply Agreement ("Agreement") governing the sale and delivery of beverage container products ("Products") between the parties. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

2. Pursuant to the Agreement, including but not limited to Sections 1.1. and 3.1, Lord Hobo agreed to purchase set quantities of specific types of Products from ZH each year at prices to be determined pursuant to the Agreement.

3. Under Section 3.1 of the Agreement, in the event Lord Hobo fails to purchase the total amount of Products required for a calendar year term under the Agreement ("Shortfall"), Lord Hobo must pay ZH for the total cost of all unpurchased Products less ZH's cost of production or acquisition ("Shortfall Amount").

4. ZH seeks to recover damages incurred by Lord Hobo's failure to pay for goods sold and delivered by ZH in 2024 in breach of the Agreement, and by Lord Hobo's failure to purchase any Products from ZH in 2025 or pay ZH the Shortfall Amount, coupled with Lord Hobo's express repudiation of its obligations to do the same.

5. In addition, Lord Hobo is in breach of several other provisions regarding its "Take or Pay" obligations under the Agreement by failing to provide ZH with an annual "Volume Forecast" or monthly "Rolling Forecast" as required by Section 3.1 of the Agreement.

6. Despite numerous demands for payment by ZH employees and representatives, Lord Hobo has repeatedly refused to honor its contractual obligations under the Agreement, by refusing to pay the $151,019.02 owed for goods sold and delivered by ZH, and by refusing to pay the Take or Pay Shortfall Amount of $1,097,612.31 owed to ZH under the parties' Agreement.

7. Lord Hobo's repeated refusal to pay for both the goods sold and delivered to Lord Hobo, and Lord Hobo's breach and unequivocal repudiation of its Take or Pay obligations leave ZH with no option but to pursue legal action.

## PARTIES

8. Plaintiff, ZH[1], is and was at all times relevant hereto a limited liability company formed in the Commonwealth of Pennsylvania, with a principal place of business at 191 South

---

[1] Plaintiff, Zuckerman Honickman, LLC, was previously known as Zuckerman Honickman, Inc. prior to its conversion to a limited liability company in 2021.

2

Gulph Road, King of Prussia, PA 19406, and at all times material to this action, was duly authorized to conduct business in the Commonwealth of Massachusetts.

9. ZH's sole member is TricorBraun, Inc., which is a Missouri corporation with a principal place of business located at 6 Cityplace Drive, Suite 1000, St. Louis, Missouri, 63141-7119.

10. Upon information and belief, Defendant Lord Hobo is a limited liability company formed under the laws of the State of Delaware, with a principal place of business located at 5 Draper Street, Woburn, Massachusetts, 1801.

11. Upon information and belief, including a good faith search of publicly available information, Lord Hobo's members are Daniel Lanigan and Valterra Partners, LLC.

12. Upon information and belief, including a good faith search of publicly available information, Daniel Lanigan is a citizen of Massachusetts.

13. Upon information and belief, including a good faith search of publicly available information, the members of Valterra Partners, LLC are Scott Macintosh and Drew Reid, who are citizens of Texas and New York, respectively.

14. As such, upon information and belief, Lord Hobo is not a citizen of Missouri.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between parties of different states.

16. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that Defendant is a resident of this District, a substantial part of the events or omissions giving rise to this claim occurred in this District, and the Agreement is subject to a forum selection clause providing any

legal proceeding arising out of the Agreement shall be exclusively brought in the state or federal courts in the Commonwealth of Massachusetts. *See* Ex. A at Section 10.4.

17. This Court has personal jurisdiction over Defendant Lord Hobo because the contracts at issue, defined below, are governed by Massachusetts law, and Lord Hobo's principal place of business is located in the Commonwealth of Massachusetts.

## FACTUAL BACKGROUND

A.  **The Parties' Agreement**

18. Among its many services, ZH acts as a broker to connect beverage brands and companies with established beverage packaging and container suppliers.

19. In connection with this business, ZH accepts orders from these companies, which have become its customers, then purchases beverage containers from third-party suppliers and arranges for delivery of those beverage containers to the customers.

20. In connection with this line of business in the beverage packaging and containers industry, ZH provided these services to Lord Hobo, a brewery that began brewing beer in June 2015.

21. On January 10, 2022, ZH and Lord Hobo entered into the Agreement, to be in effect for an initial term from March 1, 2022, until March 1, 2026, to be automatically renewed for successive twelve (12) month terms absent written intention to terminate the Agreement. *See* Ex. A at Section 2.1.

22. Under the terms of the Agreement, Lord Hobo agreed to purchase specified quantities of beverage containers/cans ("Products") from ZH each year at pricing to be determined pursuant to the Agreement terms, and ZH agreed to supply and arrange for delivery of the Products purchased by Lord Hobo. *See* Ex. A at Sections 1.1-1.7, 3.1.

23. The Agreement provides that Lord Hobo is required to furnish ZH with a written twelve (12) month forecast of Lord Hobo's anticipated requirements for Products at the start of each calendar year ("Volume Forecast"), and a written rolling ninety (90) day forecast of anticipated purchases of Products at least fifteen (15) days prior to the start of each calendar month ("Rolling Forecast"). *See* Ex. A at Section 3.1.

24. In the event Lord Hobo fails to purchase the total amount of Products required for any calendar year term under the Agreement ("Shortfall"), Lord Hobo must pay ZH for the total cost of all unpurchased Products less ZH's cost of production or acquisition ("Shortfall Amount"). *See* Ex. A at Sections 1.1, 3.1.

25. The Agreement requires payment to be made on all invoices issued by ZH within thirty (30) days of issuance. *See* Ex. A at Section 4.1.

26. The Agreement provides that interest on overdue payments shall be charged at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, or the maximum interest permitted by applicable state law. *See* Ex. A at Section 4.2.

27. The Agreement further provides that, in the event ZH incurs collection costs in connection with any overdue payment/account of Lord Hobo, that Lord Hobo is responsible for all collection costs, including, without limitation, reasonable attorney's fees, whether or not suit is ever initiated. *See* Ex. A at Section 4.3.

**B.     Lord Hobo Failed to Pay for Products Sold and Delivered in 2024**

28. In 2024, pursuant to the Agreement, Lord Hobo submitted numerous purchase orders to ZH for large quantities of Products beginning on March 20, 2024, through July 10, 2024. (collectively, the "Purchase Orders"). True and correct copies of the Purchase Orders are attached hereto as **Exhibit B**.

29.     ZH purchased the types and quantities of the Products ordered by Lord Hobo from a third-party supplier, and then had the Products delivered as directed by Lord Hobo.

30.     ZH issued invoices to Lord Hobo for the costs of the Products.[2] These invoices were issued between May 29, 2024, and October 8, 2024, (the "Invoices"), demanding payment within thirty (30) days of issuance. True and correct copies of the Invoices are attached hereto as **Exhibit C**.

31.     Lord Hobo has failed to timely pay the Invoices for the Products it ordered from ZH, for which Lord Hobo received and accepted shipment as directed by ZH.

32.     To date, Lord Hobo owes ZH at least $151,019.02 in principal charges on the outstanding Invoices, payment of which is now substantially past due.

**C.     Lord Hobo Has Failed to Purchase or Pay for Any Products in 2025 and Expressly Repudiated its Obligations to Order Products or Pay the Shortfall Amount for Unpurchased Products in 2025**

33.     For the 2025 calendar year term, under the terms of the Agreement, Lord Hobo agreed to purchase from ZH the following quantities of Products: (i) 12-ounce cans in the amount of 3,063,375; (ii) 16-ounce cans in the amount of 3,578,800; and (iii) gold ends in the amount of 6,642,175. *See* Ex. A at Schedule "A".

---

[2]     The Invoices state the shipment addresses, Products prices, and types of and quantities of beverage containers agreed to be purchased by Lord Hobo and for which Lord Hobo received and accepted shipment of pursuant to the parties' Agreement: (1) Invoice Number IN0203315 for 155,600 units of beverage containers with product description "16 oz Aluminum Regular Can Brite NO Print w/ BPANI"; (2) Invoice Number IN0204590 for 126,425 units of beverage containers with product description "19.2oz Aluminum Regular Brite Can – No print"; (3) Invoice Number IN0206967 for 155,600 units of beverage containers with product description "16 oz Aluminum Regular Can Brite NO Print w/ BPANI"; (4) Invoice Number IN0207885 for 204,225 units of beverage containers with product description "16 oz Aluminum Regular Can Brite NO Print w/ BPANI"; (5) Invoice Number IN0208610 for 155,600 units of beverage containers with product description "16 oz Aluminum Regular Can Brite NO Print w/ BPANI"; (6) Invoice Number IN0210851 for 204,225 units of beverage containers with product description "12 oz Aluminum Regular Brite Can NO Print w/ BPANI"; (7) Invoice Number IN0214267 for 126,425 units of beverage containers with product description "19.2 oz Aluminum Regular Brite Can – No Print."

34. Lord Hobo failed to provide ZH with a written Volume Forecast for the 2025 calendar year term, as required by the Agreement.

35. To date, Lord Hobo has failed to provide ZH with any Rolling Forecasts in 2025, as required by the Agreement.

36. To date, Lord Hobo has failed to order or purchase *any* Products in 2025.

37. Through words and conduct, Lord Hobo indicated to ZH it had no intention of purchasing any Products at all for the remainder of 2025.

38. Thereafter, on August 1, 2025, ZH provided Lord Hobo with written notice of the 2025 Shortfall, and issued an invoice dated July 31, 2025, for the 2025 Shortfall Amount totaling $1,097,612.31, which was calculated pursuant to the terms of the Agreement ("Shortfall Amount Invoice"). A true and correct copy of the Shortfall Amount Invoice is attached hereto as **Exhibit D**.

39. ZH's written notice to Lord Hobo also advised of Lord Hobo's other breaches of the Agreement, including Lord Hobo's failure to pay for the Products sold and delivered in 2024, and Lord Hobo's failure to provide ZH with Rolling Forecasts.

40. ZH advised Lord Hobo in writing that failure to remedy these breaches would result in the instant lawsuit to recover ZH's damages.

41. In response, Lord Hobo explicitly stated to ZH it would not be making any payments on the Shortfall Amount Invoice.

42. To date, no payments have been made on the Shortfall Amount Invoice, which is now past due.

43. In total, Lord Hobo owes ZH an outstanding principal balance of $1,248,631.33 on the Invoices and Shortfall Amount Invoice, excluding interest, costs of collection, attorneys' fees, and any unreturned dunnage/pallets.

44. ZH has made repeated demands for payment of all sums claimed herein to Lord Hobo, yet to date, Lord Hobo has failed to make full payment on any of the outstanding Invoices or the Shortfall Amount Invoice, all of which are past due.

**COUNT I - BREACH OF CONTRACT (2024 PRODUCTS SOLD AND DELIVERED)**
**ZH v. LORD HOBO**

45. Plaintiff ZH repeats and incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

46. ZH and Lord Hobo entered into a valid and enforceable contract for the sale of goods.

47. Lord Hobo submitted Purchase Orders for the Products, large quantities of 12-ounce, 16-ounce, and 19.2 ounce aluminum can beverage containers. *See* Ex. B.

48. ZH timely had the Products delivered as directed by Lord Hobo.

49. Lord Hobo received and accepted shipment of the Products.

50. The Invoices were issued, pursuant to the parties' Agreement, and a minimum principal amount of $151,019.02 in charges owed on these Invoices remains outstanding and overdue. *See* Ex. C.

51. All Invoices are past due.

52. Lord Hobo has breached its contractual obligations to ZH by failing to pay for the Products for which Lord Hobo received and accepted delivery.

53. Lord Hobo has not performed its payment obligations under the contract.

54. ZH would not have performed its obligations under the Agreement by providing the Products if it had known that Lord Hobo would refuse to pay for the Products it received or refused to receive.

55. As a result of Lord Hobo's breach of the Agreement, ZH has been damaged in an amount to be determined at trial. This amount includes at least $151,019.02 in principal damages owed under the Agreement, as well as interest, to be calculated per the Agreement at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, together with costs of collection and attorneys' fees, court costs, and costs of any unreturned dunnage/pallets.

## COUNT II - BREACH OF CONTRACT (2025 SHORTFALL AMOUNT)
## ZH v. LORD HOBO

56. Plaintiff ZH repeats and incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

57. Pursuant to the Agreement, ZH and Lord Hobo entered into a valid Take or Pay contract by which Lord Hobo agreed to either purchase the following quantities of Products from ZH in 2025: 12-ounce cans in the amount of 3,063,375; 16-ounce cans in the amount of 3,578,800; and gold ends in the amount of 6,642,175, or pay the Shortfall Amount for the Products Lord Hobo failed or refused to purchase in 2025.

58. To date, Lord Hobo has failed to order or purchase *any* Products in 2025.

59. Lord Hobo failed to provide ZH with a written Volume Forecast for the 2025 calendar year term, as required by the Agreement.

60. To date, Lord Hobo has failed to provide ZH with any Rolling Forecasts in 2025, as required by the Agreement.

61. After Lord Hobo informed ZH it had no intention of buying any Products in 2025, ZH provided Lord Hobo with written notice of the 2025 Shortfall, and issued the Shortfall Amount Invoice for the 2025 Shortfall Amount totaling $1,097,612.31. *See* Ex. D.

62. Upon receiving the written notice and Shortfall Amount Invoice, Lord Hobo informed ZH it would not pay the Shortfall Amount.

63. Through the words and conduct described in the foregoing, Lord Hobo expressly and unequivocally repudiated its Take or Pay obligations under the Agreement to either purchase the required quantities of Products of pay the Shortfall Amount.

64. This repudiation of Lord Hobo's Take or Pay obligations in the Agreement is accompanied by Lord Hobo's actual breaches of the Agreement by failing to pay for the 2024 Products sold and delivered, failing to provide ZH with a written Volume Forecast, and failing to provide ZH with any Rolling Forecasts for 2025.

65. As a result of Lord Hobo's breach of the Agreement's 2025 Take or Pay obligations and its unequivocal and express repudiation of said obligations, ZH has been damaged in an amount to be determined at trial. This amount includes at least $1,097,612.31 in principal damages owed under the Agreement, as well as interest, to be calculated per the Agreement at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, together with costs of collection and attorneys' fees, and court costs.

## COUNT III - PROMISSORY ESTOPPEL (ALL DAMAGES)
## ZH v. LORD HOBO

66. Plaintiff ZH repeats and incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

67. Plaintiff ZH pleads this Count in alternative to Counts I and II.

68. Lord Hobo made clear and definite promises to timely make payment on ZH's Invoices.

69. Lord Hobo made clear and definite promises to purchase the required quantities of Products from ZH in the calendar year 2025 or to pay any Shortfall Amount owed.

70. The promises made by Lord Hobo were made with the knowledge that they would induce action or reliance by ZH.

71. ZH justifiably relied on Lord Hobo's promises to its detriment by foregoing other business opportunities, by purchasing the large quantities of aluminum can beverage containers ordered by Lord Hobo pursuant to the Purchase Orders submitted by Lord Hobo, and by timely arranging for the aluminum can beverage containers' delivery as directed by Lord Hobo.

72. Injustice may only be avoided by enforcement of Lord Hobo's promises.

73. As a result of Lord Hobo's promises, ZH has been damaged in an amount to be determined at trial. This amount includes at least $1,248,631.33, as well as interest, to be calculated per the Terms and Conditions at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, together with costs of collection, attorneys' fees, and costs of any unreturned dunnage/pallets.

### COUNT IV - UNJUST ENRICHMENT (ALL DAMAGES)
### ZH v. LORD HOBO

74. Plaintiff ZH repeats and incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

75. Plaintiff ZH pleads this Count in the alternative to Counts I and II.

76. Lord Hobo has received, accepted, and retained the benefits of the Take or Pay Agreement and the promises made therein by ZH, including but not limited to, obtaining a secure and reliable supply of the Products, favorable pricing terms, and seller warranties.

77. Lord Hobo has also received, accepted, and retained the benefits of the Products sold and delivered by ZH, but for which Lord Hobo has not paid.

78. Because Lord Hobo has failed and refused to pay for those Products, and failed and refused to order any Products in 2025 or to pay the Shortfall Amount Invoice, Lord Hobo has been unjustly enriched in the amount of $1,248,631.33, as well as interest, to be calculated per the Terms and Conditions at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, together with costs of collection, attorneys' fees, and costs of any unreturned dunnage/pallets.

### COUNT V – QUANTUM MERUIT (ALL DAMAGES)
### ZH v. LORD HOBO

79. Plaintiff ZH repeats and incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

80. Plaintiff ZH pleads this Count in the alternative to Counts I and II.

81. By assenting to the terms of the Agreement, and through the parties' course of performance and conduct, such as Lord Hobo's history of ordering Products from ZH, Lord Hobo has received, accepted, and retained the benefits of ZH's goods and services, including but not limited to obtaining a secure and reliable supply of the Products, favorable pricing terms, and seller warranties.

82. In addition, Lord Hobo has also received, accepted, and retained the benefits of the Products sold and delivered by ZH, but for which Lord Hobo has not paid.

83. As pled in the foregoing paragraphs, which are incorporated by reference herein, Lord Hobo had notice, and in fact explicit knowledge, that payment for the goods, services, warranties, and benefits conferred upon Lord Hobo by ZH was expected, required, and demanded.

84. By providing Lord Hobo with Products for sale pursuant to terms agreed-upon by the parties, ZH reasonably expected payment from Lord Hobo.

85. Lord Hobo has refused to make payment on the Invoices or Shortfall Amount Invoice, and has made a clear and unequivocal repudiation of its obligation to satisfy its Take or Pay obligations or pay the Shortfall Amount Invoice.

86. As such, ZH is entitled to recover from Lord Hobo $1,248,631.33, as well as interest, to be calculated per the Terms and Conditions at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum, together with costs of collection, attorneys' fees, and costs of any unreturned dunnage/pallets.

WHEREFORE, Plaintiff Zuckerman Honickman LLC requests the Court enter judgment in its favor and against Defendant Lord Hobo Brewing Company, LLC and award Plaintiff the following:

(a) Compensatory damages in an amount no less than $1,248,631.33;

(b) Prejudgment interest to be calculated per the Terms and Conditions at *Wall Street Journal* 'prime rate of interest' plus two percent (2%) per annum;

(c) Costs of collection;

(d) Attorneys' fees;

(e) Costs of any unreturned dunnage/pallets; and

(f) Such other and further relief the Court deems just and proper.

Respectfully submitted,

COZEN O'CONNOR


By: */s/ Michael Filbin*
Michael Filbin, Esq.
BBO# 705341
Cozen O'Connor
200 State St., Ste. 1105
Boston, MA, 02109
(617) 849-5100
mfilbin@cozen.com

CO-COUNSEL
Ryan I. Kelly, Esq.
Cozen O'Connor
1650 Market St., Ste. 2800
Philadelphia, PA, 19103
215-665-2000
rkelly@cozen.com
*Pro Hac Vice Motion forthcoming*

*Attorneys for Plaintiff, Zuckerman Honickman, LLC*

Dated: September 11, 2025

14